USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/20/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TINA BELLINO, on behalf of herself and all others
similarly situated,

                              Plaintiffs,

    -against-

JPMORGAN CHASE BANK, N.A.,

                             Defendant.

No. 14-cv-3139 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

On December 1, 2015, Defendant JPMorgan Chase Bank, N.A. ("JPMC") filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 66.) Subsequently, the Supreme Court issued its decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) (hereinafter, "*Spokeo*"). Thereafter, the Court permitted the parties to submit supplemental briefing regarding the legal implications of *Spokeo* as concerns this action. (*See* ECF No. 94.) That supplemental briefing is the subject of the instant opinion. For the following reasons, JPMC's motion for summary judgment on the issue of standing is DENIED.

## BACKGROUND[1]

On March 17, 2004, the sole plaintiff[2] named in this putative class action, Tina Bellino, obtained a $300,000 mortgage loan from JPMC to purchase a house located at 46 Highland Avenue in Tarrytown, New York. (Compl. Ex. 1, ECF No. 1.) On May 11, 2012, Bellino sold

---

[1] The Court assumes familiarity with the factual background outlined in the Court's June 29, 2015 Opinion & Order, which denied Defendant's motion to dismiss. (ECF No. 40.)

[2] The Amended Complaint includes Justo Moronta and Julia Moronta as named plaintiffs. (ECF No. 52.) However, Plaintiff's opposition to the substantive summary judgment motion clarifies that Justo Moronta and Julia Moronta voluntarily have dismissed their claims. (ECF No. 73 at 3, n.2.)

the house.  (*Id.* ¶ 12.)  At some point thereafter, Bellino used the proceeds from the sale to pay

off the outstanding principal, interest, and fees due on the mortgage (the "Pay-Off Amount").

(*Id.* ¶ 12.)  JPMC received a check for the Pay-Off Amount on May 14, 2012 in Columbus, Ohio.

(Statement of Material Facts in Support of Defendant's Motion for Summary Judgment

("JPMC's 56.1 Statement"), ECF No. 97, ¶ 1.)  A satisfaction of mortgage was sent to the

Westchester County Clerk for recording via Federal Express on June 13, 2012.  (*Id.* ¶ 2;

Declaration of Erika Lance, ECF No. 99, ¶ 4.)  The satisfaction of mortgage was delivered to the

Westchester County Clerk by Federal Express no later than June 15, 2012.  (JPMC's 56.1

Statement ¶ 3.)

## DISCUSSION

In this putative class action, Plaintiff alleges that JPMC systematically fails to timely

present mortgage satisfaction notices for recording, in violation of Section 275 of the New York

Real Property Law ("RPL § 275")[3] and Section 1921 of the New York Real Property Actions

and Proceedings Law ("RPAPL § 1921")[4] (collectively, "the statutes").  The statutes similarly

---

[3] RPL § 275 provides that when:

> [T]he full amount of principal and interest due on the mortgage is paid, a certificate of discharge of mortgage shall be given to the mortgagor . . . .  The person signing the certificate shall, within thirty days thereafter, arrange to have the certificate presented for recording to the recording officer of the county where the mortgage is recorded.  Failure by a mortgagee to present a certificate of discharge for recording shall result in the mortgagee being liable to the mortgagor in the amount of five hundred dollars if he or she fails to present such certificate within thirty days, shall result in the mortgagee being liable to the mortgagor in the amount of one thousand dollars if he or she fails to present a certificate of discharge for recording within sixty days or shall result in the mortgagee being liable to the mortgagor in the amount of one thousand five hundred dollars if he or she fails to present a certificate of discharge for recording within ninety days.

N.Y. Real Prop. § 275.

[4] RPAPL § 1921 provides that:

> After payment of authorized principal, interest and any other amounts due thereunder . . . has actually been made . . . a mortgagee . . . must execute and acknowledge . . . a satisfaction of mortgage, and thereupon within thirty days arrange to have the satisfaction of mortgage . . . presented for recording to the recording officer of the county where the mortgage is recorded. Failure by a mortgagee to present a certificate of discharge for recording shall result in the mortgagee being liable to the mortgage in the amount of five hundred dollars if he or she fails to present such certificate within thirty days, shall result in the mortgagee being liable to the mortgagor in the

impose monetary penalties on mortgagees in the event they fail to timely arrange to have a certificate of discharge of a mortgage presented to the recording officer of the county where the mortgage is recorded.  Plaintiff contends that she is entitled to statutory damages based on JPMC's alleged violations of the statutes.  In light of the Supreme Court's decision in *Spokeo*, which addresses the "injury-in-fact" requirement of Article III standing, JPMC argues that Plaintiff lacks standing because she does not allege she suffered any additional harm beyond JPMC's alleged failure to timely present the certificate of discharge—a technical violation of the statutes.

## I.      Article III Standing

"[T]he irreducible constitutional minimum of standing [in federal court] contains three elements": injury, traceability, and redressability.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id.* (internal quotations and citations omitted).  "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  *Id.* at 560–61 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42, (1976)).  "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (internal quotation and citation omitted).

---

amount of one thousand dollars if he or she fails to present a certificate of discharge for recording within sixty days or shall result in the mortgagee being liable to the mortgagor in the amount of one thousand five hundred dollars if he or she fails to present a certificate of discharge for recording within ninety days.

N.Y. Real Prop. Acts. § 1921.

As Plaintiff is the party seeking to invoke federal jurisdiction, she bears the burden of establishing the three elements of Article III standing. *Lujan*, 504 U.S. at 561. Since Article III standing is "an indispensable part of the plaintiff's case, each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id*. At the summary judgment stage—the current posture of this action—Plaintiff must demonstrate standing through specific facts via affidavits or other evidence. *Id*.

In the present case, Defendant challenges Plaintiff's ability to demonstrate the first element of Article III standing—injury-in-fact.[5] The Supreme Court's recent decision in *Spokeo* reaffirms the requirements of the injury-in-fact showing. Accordingly, the Court first turns to a discussion of the Supreme Court's decision in *Spokeo*.

## II.    Injury-in-Fact and *Spokeo*

In *Spokeo*, the Supreme Court analyzed whether a plaintiff had standing to sue Spokeo, a "'people search engine,' which searches a wide spectrum of databases to gather and provide personal information about individuals to a variety of users, including employers wanting to evaluate prospective employees," for violations of the Fair Credit Reporting Act of 1970 (the "FCRA"). 136 S. Ct. at 1543. The plaintiff asserted that his Spokeo-generated profile reflected inaccurate information, in violation of the FCRA, which provides for statutory damages in instances where a consumer reporting agency fails to comply with the accurate reporting requirements. *Id*. at 1545. While the Ninth Circuit held that the plaintiff had standing to sue for

---

[5] Plaintiff has satisfied the traceability and redressability requirements of Article III standing. With respect to traceability, Plaintiff was injured due to Defendant's failure to timely file mortgage satisfaction notices. As to redressability, it is clear that Plaintiff would be compensated for her injuries through the award of statutory damages.

violations of the FCRA, the Supreme Court reversed and remanded, reasoning that the Ninth Circuit had failed to analyze completely the "injury-in-fact" standing requirement.

In its opinion, the Supreme Court addressed the "injury-in-fact" prong of Article III standing, particularly its dual requirements of "particularization" and "concreteness." "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." 136 S. Ct. at 1548 (internal citation omitted). Concreteness, meanwhile, refers to the realness of the injury. *Id*. Though an injury must be real, it need not be tangible. *Id*. at 1549. With respect to determining whether an intangible harm constitutes an injury-in-fact, the Court instructed that "both history and the judgment of Congress play important roles." *Id*. In particular,

> [b]ecause the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.

*Id*. Additionally, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Id*.

While congressional intent is instructive for standing purposes, the Supreme Court nevertheless cautioned that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. At the same time, the Court noted that "the risk of real harm" can, in certain instances, "satisfy the requirement of concreteness." *Id*. The Supreme Court pointed to two examples of cases where a plaintiff satisfied Article III's standing requirements without alleging "any *additional* harm beyond the one Congress has identified": (1) *Public Citizen v. Department*

*of Justice*, 491 U.S. 440, 449 (1989) ("*Public Citizen*"),[6] and (2) *Federal Election Commission v. Akins*, 524 U.S. 11, 20–25 (1998) ("*Akins*").[7]   *Id.*

      With these principles in mind, the Supreme Court in *Spokeo* noted the tension between, on the one hand, the idea that "Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk," and, on the other, the notion that the plaintiff could not "satisfy the demands or Article III by alleging a bare procedural violation."  *Id*. at 1550.  The Court itself did not resolve that tension, instead remanding the case to the Ninth Circuit to decide "whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement."  *Id*.

---

[6] In *Public Citizen*, the American Bar Association ("ABA") challenged Public Citizen's standing to bring suit for the ABA's alleged failure to comply with disclosure requirements under the Federal Advisory Committee Act ("FACA").  The Supreme Court rejected the ABA's standing challenge, holding that Public Citizen had standing to bring suit.  491 U.S. at 449.  The Court noted that Public Citizen was "attempting to compel the Justice Department and the ABA Committee to comply with FACA's charter and notice requirements" and "seek[ing] access to the ABA Committee's meetings and records in order to monitor its workings and participate more effectively in the judicial selection process."  *Id*.  The Court held that the ABA's "refusal to permit [Public Citizen] to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue."  *Id*.  Further, the Court determined that Public Citizen need not "show more than that they sought and were denied specific agency records."  *Id*.

[7] In *Akins*, a group of voters sought to challenge the Federal Election Commission's ("FEC") determination that the American Israel Public Affairs Committee ("AIPAC") was not a political committee.  Under the Federal Election Campaign Act of 1971 ("FECA"), political committees are required to disclose membership, contribution, and expenditures.  The FEC argued before the Supreme Court that the voters lacked standing to challenge its determination that AIPAC was not a political committee.  The Supreme Court disagreed, noting that "[t]he 'injury in fact' that respondents have suffered consists of their inability to obtain information—lists of AIPAC donors (who are, according to AIPAC, its members), and campaign-related contributions and expenditures—that, on respondents' view of the law, the statute requires that AIPAC make public."  524 U.S. at 21.  The Court further noted that the information sought by the group of voters "would help them (and others to whom they would communicate it) to evaluate candidates for public office, especially candidates who received assistance from AIPAC, and to evaluate the role that AIPAC's financial assistance might play in a specific election."  *Id*.  Consequently, the injury alleged was sufficiently "concrete and particular" to satisfy Article III standing.  *Id*.

### III.   Post-*Spokeo* Cases Addressing
### Standing in the RPL § 275 and RPAPL § 1921 Context

Following the Supreme Court's decision in *Spokeo*, several courts in this Circuit have addressed the exact issue presently before the Court—whether a plaintiff has standing to sue on alleged violations of RPL § 275 and RPAPL § 1921.

### A.   *Jaffe* and *Whittenburg*

In *Jaffe v. Bank of America, N.A.*, No. 13-cv-4866 (VB), 2016 WL 3944753 (S.D.N.Y. July 15, 2016) and *Whittenburg v. Bank of America, N.A.*, No. 14-cv-947 (VB), 2016 WL 3944753 (S.D.N.Y. July 15, 2016), Judge Briccetti addressed the issue of whether plaintiffs in two putative class actions had standing to sue Bank of America for alleged violations of the statutes due to its repeated failure to timely file mortgage satisfaction notices.  Prior to *Spokeo*, Judge Briccetti had ruled that the plaintiffs had Article III standing and had approved preliminarily a class-action settlement of both actions.  2016 WL 3944753, at *1.  Based upon the Court's "ongoing obligation to scrutinize its own subject matter jurisdiction," Judge Briccetti revisited the standing issue in light of *Spokeo*.  *Id.*

Judge Briccetti determined that the plaintiffs had met "the concreteness requirement [of standing] . . . because RPL § 275 and RPAPL § 1921 create a procedural right, namely, the right to a timely filed mortgage satisfaction notice, the violation of which is a concrete injury."  *Id*. at *3.  In coming to this conclusion, the court first noted that it is an "open question in the Second Circuit whether a <u>state</u> statute can define a concrete injury for the purposes of Article III standing."  *Id*. (emphasis in original).  The court relied upon the reasoning of both the Seventh and Ninth Circuits in concluding that a "state statute, like a federal statute, may create a legal right, the invasion of which may constitute a concrete injury for Article III purposes."  *Id*. at *4.

7

From there, Judge Briccetti noted that the plaintiffs alleged that the "when [the] defendant violated [the] plaintiffs' statutory right to a timely filed mortgage satisfaction notice, it created a 'real risk of harm' by clouding the titles to their respective properties.'" *Id.* (citing *Spokeo*, 136 S. Ct. at 1549). Furthermore,

> The State Legislature has provided a private right of action and a heuristic for quantifying damages, possibly in recognition of both the concreteness of this harm and the difficulty in otherwise measuring damages. The types of harm the statutes protect against are real. Because to the public, these mortgages appeared not to have been satisfied, plaintiffs could have realized that harm if they had, for example, tried to sell or encumber the subject property, or tried to finance another property and been subjected to a credit check. Through no fault of their own, plaintiffs would have faced unnecessary obstacles to their goals. Whether such harm actually was realized is of no moment, because a plaintiff 'need not allege any additional harm' beyond the violation of the statutory right.

*Id.* (quoting *Spokeo*, 136 S. Ct. at 1549). Comparing the injury caused by delayed filing of mortgage satisfaction notices to the "intangible, concrete injuries" highlighted by the Supreme Court in *Spokeo*, Judge Briccetti concluded that "'[t]imely, clear title' is a right just as recognizable as one's good name." *Id.* Accordingly, Judge Briccetti held that the plaintiffs had satisfied the injury-in-fact requirement for standing.

### B. *Villanueva* and *Bowman*

Following Judge Briccetti's opinion in *Jaffe*, Magistrate Judge Smith addressed a similar issue in *Villanueva v. Wells Fargo Bank, N.A.*, No. 13-cv-5429 (S.D.N.Y. Aug. 5, 2016) (ECF No. 101) and *Bowman v. Wells Fargo Bank, N.A., et al.*, No. 14-cv-648 (S.D.N.Y. Aug. 5, 2016) (ECF No. 111.). In light of *Spokeo*'s teaching that the legislature's judgment is instructive in examining whether a particular intangible harm constitutes an injury-in-fact, Judge Smith examined the legislature history of the statutes. (No. 13-cv-5429, ECF No. 101 at 5-7.) Judge Smith concluded that

> the New York State Legislature sought to provide a statutory remedy for the harm associated with mortgagors paying fees to mortgagees upon satisfaction of their

> mortgages for the purpose of having a certificate of discharge recorded with the county clerk, but then subsequently finding out that the mortgagee failed to do so in a timely fashion, causing the mortgagor to pay a second fee in order to ensure that this is, in fact, done.

(*Id*. at 7.)

Turning to the facts of *Villanueva* and *Bowman*, Judge Smith noted that the plaintiffs "allege nothing more than bare procedural violations of RPAPL § 1921(1) and RPL § 275(1), *rather than alleging that they have suffered the concrete harm that these statutory provisions are intended to address*." (*Id*.) (emphasis added). While Judge Smith acknowledged Judge Briccetti's decision in *Jaffe*, Judge Smith ultimately determined that the plaintiffs in *Villanueva* and *Bowman* had failed to allege the "real risk of harm" identified by Judge Briccetti—in particular, that "there was a cloud on the titles to their respective properties as a result of [the] Defendants' failure to timely file their mortgage satisfaction notices which interfered with their ability to sell or encumber their properties or to finance another property." (*Id*. at 9.) Accordingly, Judge Smith concluded that the plaintiffs had failed to plead a sufficiently concrete and particular injury to substantiate Article III standing. (*Id*. at 8.) Rather than dismiss the action, however, Judge Smith allowed the plaintiffs "an opportunity to replead their claims to satisfy the injury-in-fact requirement as set forth in *Spokeo*." (*Id*. at 10.)

## C. *Zink*

The Court also notes the opinion of Magistrate Judge Jeremiah McCarthy of the Western District of New York in *Zink v. First Niagara Bank, N.A.*, No. 13-cv-01076 (RJA) (JJM), 2016 WL 787963 (W.D.N.Y. Mar. 1, 2016). There, Judge McCarthy imposed a limited stay pending the outcome of the Supreme Court's decision in *Spokeo* in a case involving alleged violations of the statutes. Judge McCarthy noted that "[w]hile 'statutes *can* create legal rights, the violation of which constitutes sufficient injury to confer standing to sue, [t]his does not mean that violating a

statue results *per se* in an injury-in-fact . . . .[I]n order to establish standing, a statutory violation must constitute a *palpable* deprivation.'"  *Zink*, 2016 WL 787963, at *3 (quoting *Boelter v. Hearst Communications, Inc.*, 2016 WL 361554, at *2 (S.D.N.Y. Jan. 28, 2016) (emphasis in original)).  Because the plaintiff sought merely a statutory penalty, and because at the time the action was commenced the satisfaction of mortgage had been filed and the plaintiff did not plead that the belated filing injured him, the court "question[ed] whether the belated filing of [the] plaintiff's satisfaction of mortgage amounts to a 'palpable deprivation' sufficient for Article III standing."  *Zink*, 2016 WL 787963, at *3.

Following the Supreme Court's decision in *Spokeo*, Judge McCarthy returned to the issue of standing.  *Zink*, 1:13-cv-01076 (RJA) (JJM) (W.D.N.Y. July 1, 2016) (ECF No. 119 at 6.) Judge McCarthy noted that "[w]hile the Court in *Spokeo* did not definitively decide which types of statutory violations suffice to create Article III standing,[] some portions of the opinion could lead to the conclusion that standing does not exist in this case."  (*Id*. at 7.)  At the same time, Judge McCarthy highlighted the following language from *Spokeo*: "'. . . the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact.  In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified.'"  (*Id*.) (quoting *Spokeo*, 136 S. Ct. at 1549).  To resolve the "confusion" of the standing issue, Judge McCarthy looked to Justice Thomas's concurring opinion in *Spokeo*, which "focus[es] on the nature of the right being asserted."  (*See* 1:13-cv-01076 (RJA) (JJM), ECF No. 119 at 8.)

In his concurrence, Justice Thomas writes:

Common-law courts imposed different limitations on a plaintiff's right to bring suit depending on the type of right the plaintiff sought to vindicate.  Historically, common-law courts possessed broad power to adjudicate suits involving the alleged violation of private rights, even when plaintiffs alleged only the violation of those

rights and nothing more. Private rights are rights belonging to individuals, considered as individuals . . . . In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded . . . . Common-law courts, however, have required a further showing of injury for violations of public rights—rights that involve duties owed to the whole community, considered as a community, in its social aggregate capacity . . . . These differences between legal claims brought by private plaintiffs for the violation of public and private rights underlie modern standing doctrine and explain the Court's description of the injury-in-fact requirement.

136 S. Ct. at 1551–52. In light of this distinction, as well as the Supreme Court's determination in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) that "testers" of violations of the Fair Housing Act of 1968 suffered an injury sufficient to confer standing, Judge McCarthy concluded that the plaintiff's injury was "no more ephemeral than that of the testers in *Havens*." (*See* 1:13-cv-01076 (RJA) (JJM), ECF No. 119 at 9.) Therefore, Judge McCarthy concluded that "under the present state of the law the scales tip slightly (but only slightly) in favor of finding that [the] plaintiff has Article III standing to pursue claims on behalf of himself and the class." (*Id.* at 11.)[8]

## IV.    Bellino's Claim

Having examined the state of the law in this Circuit regarding standing to sue on alleged violations of RPL § 275 and RPAPL § 1921, the Court now turns to its analysis of the present action.

As a threshold matter, this Court agrees with Judge Briccetti that "a state statute, like a federal statute, may create a legal right, the invasion of which may constitute a concrete injury for Article III purposes." *Jaffe*, 2016 WL 3944753, at *4. As noted by Judge Briccetti, though the Second Circuit has yet to address the issue, other circuits have determined that state statutes

---

[8] While the *Jaffe* and *Whittenburg*; *Villanueva* and *Bowman*; and *Zink* opinions are not binding on this Court, they are nevertheless instructive in analyzing whether Plaintiff has standing to sue in the present action.

may define an injury for Article III standing purposes. *Id*. at *3 (citing *FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir. 1988); *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001); *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 528 F.3d 712 (10th Cir. 2008)). This Court finds the reasoning of those other circuits persuasive.

The Court is satisfied that Plaintiff has established the particularization prong of the injury-in-fact requirement. It is undisputed that Plaintiff transmitted a check to Defendant for the Payoff Amount and satisfied *her* mortgage. Accordingly, Plaintiff's suit implicates her personal interests and her statutory rights under RPL § 275 and RPAPL § 1921.

The more difficult issue for the Court is whether Plaintiff sustained a concrete injury sufficient to confer Article III standing. In *Spokeo*, the Supreme Court noted that the concreteness requirement does not mean that a plaintiff need allege a "tangible" injury. 136 S. Ct. at 1349. Instead, the Supreme Court "confirmed . . . that intangible injuries can nevertheless be concrete." *Id*. Further, "both history and the judgment of Congress play important roles" in deciphering whether an intangible injury is concrete. *Id*. Accordingly, the Court finds it instructive to look to both history and the judgment of the New York State legislature to determine whether alleged violations of the statutes constitute concrete injuries.

First, the "alleged intangible harm"—a cloud on title—"has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549. Actions to quiet title have a longstanding history in New York. *See, e.g., Greenberg v. Schwartz*, 73 N.Y.S.2d 458, 459 (Sup. Ct. 1947), *aff'd*, 273 A.D. 814, 76 N.Y.S.2d 95 (2d Dep't 1948) ("This is an action to remove that mortgage as a cloud upon plaintiff's title . . . . [T]his form of action to erase it from the record is an ancient and proper remedy.").

12

Second, the New York State legislature clearly intended to provide a remedy to a homeowners whose satisfaction of mortgage is not timely filed.  New York State Senator John A. DeFrancisco, a sponsor of the statutes, stated the following in a letter to the Counsel to the New York State Governor:

> The measure is a response to the serious issues that can arise when a certificate of discharge is not filed for a mortgage that has been paid off.  A fee for this document to be presented to the county clerk is paid at the time of a property's sale, indicating that the property's title is clear of this lien.  When a lending institution fails to carry through on making the filing, it can often fall upon a current seller to again pay for the service to ensure that their present transaction can go forward.
>
> Banks and other lenders have their mortgages recorded with the county clerk to ensure that others are aware of their interest in a property.  It is just as important that the document giving notice of the satisfaction of that interest is properly recorded.  The legislation provides a remedy to ensure this takes place.

(Declaration of Todd S. Garber, ECF No. 103, Ex. 1.).  *See also* New York Sponsors Memorandum, 2005 S.B. S48B.

The Court rejects the notion that the purpose of the statutes is merely to compensate the homeowner for duplicative payments to file a satisfaction of mortgage (i.e., mortgagor pays fee to mortgagee who fails to file certificate and mortgagor forced to pay fee again to file himself).  As Judge Cathy Seibel noted in an oral decision on July 31, 2014 in the *Villanueva* and *Bowan* cases (prior to their transfer to Magistrate Judge Smith for approval of the proposed settlement),

> [t]he statute has [] escalating penalties the longer the mortgagee fails in its duty, which was clearly intended to incentivize mortgagees to comply, and to do so sooner rather than later.  And the amount of the penalties are higher than and bear no relation to the amount of the filing fees, again showing that the Legislature had purposes other than simply reimbursing a mortgagee who had to pay twice.  The statute easily could have called simply for such reimbursement if that's what the Legislature wanted.

(Declaration of Todd S. Garber, ECF No.103, Ex. 2 at 9:10–18.)  Plainly, then, the New York State legislature intended to address the clear title issues that arise from a mortgagee failing to

timely file a mortgage satisfaction by implementing monetary penalties to be awarded to a mortgagor whose satisfaction is belatedly filed.  The escalating penalties delineated in the statutes are intended to penalize mortgagees that do not timely file certificates of satisfaction, in recognition of the interest mortgagors have in a public record cleared of encumbering mortgages bearing their names.  Ultimately, both history and the judgment of the New York State legislature indicate an intent to elevate the harm associated with a mortgagee's delayed filing of a satisfaction of mortgage to a concrete injury.

The Court is mindful, however, of the Supreme Court's warning that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  136 S. Ct. at 1549.  In an instance where a plaintiff merely alleges "a bare procedural violation, divorced from any concrete harm," that plaintiff would lack Article III standing.  *Id.*  The Supreme Court's concern with bare procedural violations in *Spokeo* appears tied to the particular statute at issue in that case.  As the Supreme Court noted, an entity can violate the FCRA in a multitude of ways.  However, not every violation implicates a concrete harm.  For instance, the Supreme Court noted that it would be "difficult to image how the dissemination of an incorrect zip code, without more, could work any concrete harm."  136 S. Ct. at 1550.  While Spokeo may technically violate the FCRA by publishing an incorrect zip code, the Supreme Court appeared to reject that violation, standing alone, as a basis for Article III standing.  The statutes at issue in this case are of a different nature than the FCRA.  Here, there is a single means of violating the statutes—belatedly filing the certificates.  Consequently, there is no basis for differentiating between bare procedural violations of the statutes and violations resulting in concrete harms.

The Court finds the reasoning of the Eleventh Circuit in *Mahala A. Church v. Accretive Health, Inc.* particularly persuasive.  No. 15-15708, 2016 WL 3611543 (11th Cir. July 6, 2016).  As the court in *Accretive Health* noted, "[a]n injury-in-fact, as required by Article III, 'may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing . . . .'" 2016 WL 3611543, at *3 (quoting *Havens*, 455 U.S. at 373).  *See also Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."); *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 175 (2d Cir. 2012) ("[I]t has long been recognized that a legally protected interest may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.") (internal quotations and citations omitted)).  In *Accretive Health*, the Eleventh Circuit held that the plaintiff had Article III standing to pursue a violation of the Fair Debt Collection Practices Act ("FDCPA") where the plaintiff alleged that the defendant sent the plaintiff a letter that did not contain the requisite FDCPA disclosures:

> The FDCPA creates a private right of action, which [the plaintiff] seeks to enforce.  The Act requires that debt collectors include certain disclosures in an initial communication with a debtor, or within five days of such communication.  *See* 15 U.S.C. § 1692e(11); 1692g(a)(1)–(5).[]  The FDCPA authorizes an aggrieved debtor to file suit for a debt collector's failure to comply with the Act.  *See* 15 U.S.C. § 1692k(a) ("[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person ....")  Thus, through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures.
>
> It is undisputed that the letter [the defendant] sent to [the plaintiff] did not contain all of the FDCPA's required disclosures.  [The plaintiff] has alleged that the FDCPA governs the letter at issue, and thus, alleges she had a right to receive the FDCPA-required disclosures.  Thus, Church has sufficiently alleged that she has

sustained a concrete—*i.e.*, "real"—injury because she did not receive the allegedly required disclosures.

2016 WL 3611543, at *3. In the present case, it is clear that the statutes require a mortgagee to file a satisfaction of mortgage within 30 days of the date on which the full amount of the principal and interest on the mortgage is paid. Further, the statutes authorize a mortgagor to file suit for a mortgagee's failure to comply with the statutes. Consequently, the New York State legislature has created a new right—the right to have a certificate of satisfaction filed within 30 days of paying off a mortgage—and a new injury—not having that certificate timely filed. It is undisputed that Defendant did not file a certificate of satisfaction of mortgage for Plaintiff's mortgage within 30 days of receipt of the full amount of principal and interest on Plaintiff's mortgage. That Defendant ultimately filed the certificate after the 30-day deadline and while Plaintiff may not have sustained additional, economic injuries is of no moment. The Supreme Court was clear in *Spokeo* that a concrete harm need not be tangible. The statutes create a substantive right for Plaintiff to have the satisfaction of mortgage timely filed, and Defendant violated that right. Nothing more is required, here, to demonstrate an injury-in-fact.

## CONCLUSION

For the foregoing reasons, JPMC's motion for summary judgment on the issue of standing is DENIED. The Court respectfully directs the Clerk to terminate the motion at ECF No. 95. JPMC's substantive summary judgment motion will be addressed in due course.

Dated:   September 20, 2016          SO ORDERED:
         White Plains, New York

                                    _____
                                         NELSON S. ROMÁN
                                    United States District Judge