UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TINA BELLINO, on behalf of herself and all others
similarly situated,

Plaintiffs,

-against-

JPMORGAN CHASE BANK, N.A.,

Defendant.

No. 14-cv-3139 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Before the Court is a motion for summary judgment filed by Defendant JPMorgan Chase

Bank, N.A. ("JPMC") pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The

Complaint purports to bring a class action against JPMC for its alleged violation of Section 275

of the New York Real Property Law ("RPL § 275") and Section 1921 of the New York Real

Property Actions and Proceedings Law ("RPAPL § 1921") (collectively, "the Statutes").   For

the following reasons, JPMC's motion is DENIED.

## BACKGROUND[1]

On March 17, 2004, the sole plaintiff[2] named in this putative class action, Tina Bellino,

obtained a $300,000 mortgage loan from JPMC to purchase a house located at 46 Highland

Avenue in Tarrytown, New York. (Compl. Ex. 1, ECF No. 1.)  On May 11, 2012, Bellino sold

the house. (*Id.* ¶ 12.)  At some point thereafter, Bellino used the proceeds from the sale to pay

---

[1] The Court assumes familiarity with the factual background outlined in the Court's June 29, 2015 Opinion & Order. (ECF No. 40.)

[2] The Amended Complaint includes Justo Moronta and Julia Moronta as named plaintiffs. (ECF No. 52.) However, Plaintiff's opposition to the substantive summary judgment motion clarifies that Justo Moronta and Julia Moronta voluntarily have dismissed their claims. (ECF No. 73 at 3, n.2.)


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/31/2016

off the outstanding principal, interest, and fees due on the mortgage (the "Pay-Off Amount").

(*Id.* ¶ 12.)  JPMC received a check for the Pay-Off Amount on May 14, 2012 in Columbus, Ohio.

(Statement of Material Facts in Support of Defendant's Motion for Summary Judgment

("JPMC's 56.1 Statement"), ECF No. 67, ¶ 1.)  A satisfaction of mortgage was sent to the

Westchester County Clerk for recording via Federal Express on June 13, 2012.  (*Id.* ¶ 2;

Declaration of Erika Lance, ECF No. 70, ¶ 4.)  The Westchester County Clerk's Office (the

"Clerk") recorded the Certificate on June 21, 2012.  (*See* Compl. Ex. 1, ECF No. 1.)

**STANDARD ON A SUMMARY JUDGMENT**

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil

Procedure. The rule states in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—
> or the part of each claim or defense—on which summary judgment is sought.
> The court shall grant summary judgment if the movant shows that there is no
> genuine dispute as to any material fact and the movant is entitled to judgment
> as a matter of law.

Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of

any genuine dispute or issue of material fact by pointing to evidence in the record, "including

depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which

it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has fulfilled its preliminary burden,

the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact.

Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Courts

must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all

reasonable inferences in its favor."  *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d

712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)).

2

In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

## DISCUSSION

The question before the Court is one of statutory interpretation: whether a satisfaction of mortgage or certificate of discharge ("satisfaction") is "presented" for recording at the time that it is mailed to, or at the time it is received by, the county clerk.  When interpreting a statute, "we begin with the text … to determine whether its language is clear or ambiguous". *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005) (citing *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)).  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.*  If the language remains ambiguous, the Court will resort first to canons of statutory construction, and then to legislative history.  *United States v. Dauray,* 215 F.3d 257, 264 (2d Cir. 2000).[3]

---

[3] Defendant asserts that the Court, in interpreting the statute, should apply the rule of lenity, which dictates that in construing an ambiguous criminal statute, a court should resolve the ambiguity in favor of the party facing potential penalty.  (*See e.g.*, Defendant's Memorandum of Law in Support of Motion for Summary Judgment 7, ECF No. 68 [hereinafter Def.s' Mem.].)  However, "lenity is a doctrine of last resort, and will be invoked only if a court can only make no more than a guess as to what [the Legislature] intended." *People v. Feldman*, 7 Misc. 3d 794, 821, 791 N.Y.S.2d 361 (Sup. Ct. 2005) (internal quotation marks and citation omitted); *see also United States v. Canales*, 91 F.3d 363, 367–68 (2d Cir. 1996) ("The rule is inapplicable unless after a court has seize[d][on] every thing from which aid can be derived, it is still left with an amigu[ity]." (internal quotation marks and citations omitted)).  Furthermore, as this Court has said previously, whether or not the Statutes are penal, "[a] penal statute is not to be construed so strictly as to defeat the obvious intention of the legislature in passing it." *Cotheal v. Brouwer*, 5 N.Y. 562, 562 (1851); *see also People v. Minowitz*, 13 N.Y.S.2d 937, 939–40 (City Ct. 1939) ("[where penal statutes] are remedial and enacted for the good of the public generally, they are to be construed equitably, and so as not to defeat their purpose").  Given the canons of statutory interpretation available, and the risk of defeating the Legislature's intent, the Court declines to apply the rule of lenity.

# I.     Statutory Text of RPL § 275 & RPAPL § 1921

We look first to the text of the Statutes.  Both Statutes state that a mortgagee must "arrange" to have a satisfaction "presented [to the appropriate recording officer] for recording" within 30 days.  If the mortgagee fails to "present" the satisfaction for recording within 30 days, a series of escalating fees attach:

> RPL § 275(1): Whenever … the full amount of principal and interest due on the mortgage is paid,  a certificate of discharge of mortgage shall be given to the mortgagor . . . .  *The person signing the certificate shall, within thirty days thereafter, arrange to have the certificate presented for recording to the recording officer of the county where the mortgage is recorded.  Failure by a mortgagee to present a certificate of discharge for recording shall result in the mortgagee being liable to the mortgagor* in the amount of five hundred dollars if he or she fails to present such certificate within thirty days, shall result in the mortgagee being liable to the mortgagor in the amount of one thousand dollars if he or she fails to present a certificate of discharge for recording within sixty days or shall result in the mortgagee being liable to the mortgagor in the amount of one thousand five hundred dollars if he or she fails to present a certificate of discharge for recording within ninety days.

> RPAPL § 1921(1): After payment of authorized principal, interest and any other amounts due thereunder . . . has actually been made … *a mortgagee . . . must execute and acknowledge . . . a satisfaction of mortgage, and thereupon within thirty days arrange to have the satisfaction of mortgage . . . presented for recording to the recording officer of the county where the mortgage is recorded.  Failure by a mortgagee to present a certificate of discharge for recording shall result in the mortgagee being liable to the mortgagor* in the amount of five hundred dollars if he or she fails to present such certificate within thirty days, shall result in the mortgagee being liable to the mortgagor in the amount of one thousand dollars if he or she fails to present a certificate of discharge for recording within sixty days or shall result in the mortgagee being liable to the mortgagor in the amount of one thousand five hundred dollars if he or she fails to present a certificate of discharge for recording within ninety days…Delivery of a satisfaction of mortgage in accordance with the terms of section two hundred seventy-five of the real property law shall be deemed to satisfy the requirements of this section regarding the satisfaction of mortgages. [4]

---

[4] Neither party has addressed the final sentence in RPAPL § 1921(1), which appears to indicate that the

N.Y. Real Prop. § 275; N.Y. Real Prop. Acts. § 1921 (emphasis added).

JPMC argues that the Statutes contain two separate thirty-day deadline provisions. (Defendant's Reply Brief in Support of Summary Judgment 5, ECF No. 76 [hereinafter Def.s' Reply].)  The first provision requires mortgagees to "arrange" to have a satisfaction presented within thirty days.  (*Id.*)  The second provision requires that they actually make that presentation within thirty days.  (*Id.*)  JPMC further argues that the use of an identical deadline for both provisions indicates that the Legislature intended for "present" and "arrange to present" to have the same meaning—which is to mail (the satisfaction).  Thus, according to JPMC, a satisfaction is presented for recording on the date that it is placed with a mail service for delivery to the appropriate county clerk.  Under this interpretation, JPMC fulfilled its obligation to present Bellino's satisfaction for recording when it gave the document to FedEx on the thirtieth day after the mortgage was paid off.  In contrast, Bellino argues that the first provision of the Statutes requires that a mortgagee "arrange" to have the satisfaction presented within thirty days, including by contracting with third-party servicers.  The second provision imposes strict liability

---

requirements regarding satisfaction of mortgages in this subsection–including presentation for recording–would be deemed satisfied upon delivery.  Although the delivery must accord with the terms of RPL § 275, this provision does not discuss or implicate delivery; therefore, RPL § 275 does not appear to undermine the plain meaning of this sentence.  However, other subsections of RPAPL § 1921 explicitly impose liability upon mortgagees for failure to *deliver* the satisfaction of mortgage within designated time periods.  *See e.g.*, N.Y. Real Prop. Acts. § 1921(4) ("if the mortgagee fails within ninety days to deliver the satisfaction of mortgage…the mortgagee shall be liable...").  On one hand, the last sentence in RPAPL § 1921(1) could indicate presentation is complete upon delivery to the county clerk.  *See ILC Data Device Corp. v. County of Suffolk,* 182 A.D.2d 293, 298–99, 588 N.Y.S.2d 845, 848 (2d Dep't 1992) ("It is a basic principle of statutory interpretation that statutory language is generally to be construed in accordance with its plain and obvious sense and the meaning attached to it should be neither strained nor artificial.")  On the other hand, the distinction between subsections could reflect legislative intent to signal a difference between delivery and presentation for recording.  *See Sosa v. Alvarez-Machain,* 542 U.S. 692, 712, 124 S. Ct. 2739, 2754, 159 L. Ed. 2d 718, n.9 (2004) ("the usual rule [is that], when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.")  Given the discrepancy between the seemingly plain meaning of the last sentence in RPAPL § 1921(1), and the difference between RPAPL § 1921(1) & § 1921(4), the Court is not persuaded by either interpretation without a deeper look at canonical indicators of statutory intent.

if the satisfaction is not *received* by the clerk within that timeframe.  According to Bellino, JPMC violated the statute by failing to ensure that the satisfaction was "presented to" or received by the county clerk within thirty days after the mortgage was paid off.

### a.   Ordinary Meaning of the Term "Present"

To determine the meaning of the term "present," we look first to the plain and ordinary meaning of the term.  *Riegert Apartments Corp. v. Planning Bd. of Town of Clarkstown*, 57 N.Y.2d 206, 209, 441 N.E.2d 1076, 1078 (1982); *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1893, 185 L. Ed. 2d 1003 (2013) ("As in any statutory construction case, we start, of course, with the statutory text, and proceed from the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." (citation and quotations omitted)).  Citing the Miriam-Webster Dictionary, the Oxford English Dictionary and Black's Law Dictionary, the definitions Bellino offers include: "to give something to someone in a formal way"; "to offer, deliver, hand over"; "to bring or place (a thing) before or into the hands of a person for acceptance".  (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment 8-9, ECF No. 73 [hereinafter Pl.'s Opp.].)  Although, as JPMC points out, at least one dictionary defines "present" more broadly to encompass "send", *see* (Def.s' Reply 2 (citing Webster's New World College Dictionary)), the prevailing plain meaning of the term appears to imply receipt.

JPMC argues that, because the Legislature established deadlines through filing dates in other provisions of the same statutes, its failure to do so here is indicative of an intent not to require receipt. According to this logic, if the Legislature intended to guarantee that the clerk received the satisfaction within thirty days after the balance on the mortgage was paid, it would have written the statutes to, for instance, require mortgagees to "file" the satisfaction, rather than

requiring that it be "presented for recording".  This argument is unavailing.  The provisions cited

by JPMC— N.Y. R.P.A.P.L. § 1921(5)(a), § 1946 and N.Y. R.P.L.§ 280(6)--either concern

filings of objections, affidavits and notices regarding special proceedings, or analogize recording

with filing in reference to the actual act of the county clerk.  (*See* Defs. Mem. 8-9.)  To "present"

something "for recording" appears to be a term of art commonly used to describe the submission

of legal instruments affecting real property to the recording clerk, *see e.g.*, N.Y. Real Prop. Law

§ 291-d (referencing instruments of conveyance "presented for recording"); N.Y. Real Prop. Law

§ 321 (referencing certificates "presented to the recording officer"); N.Y. Real Prop. Law § 335

(referencing certificates of abandonment to be "presented" to the county clerk for recording),

whereas, the term "file" is often employed with regard to documents associated with litigation,

such as objections and affidavits.[5]  Because these verbs appear to correspond with their subjects,

these provisions do not make clear that the Legislature perceived, or meant to signal any

difference between the terms "present" and "file".[6]  Thus, the imposition of filing dates does not

resolve the question of whether the Legislature intended for presentation to be complete upon

mailing or receipt in RPL § 275 and RPAPL § 1921.

## II.    "Present" in Other Provisions of New York Law

A look at other provisions of New York Real Property Law that include the term

"present" shed some light on the Legislature's intent in employing this word.  N.Y. Real Prop.

---

[5] In support of its argument, JPMC cites subsection 5(a) of  RPAPL § 1921, which states: "[u]nless the mortgagee shall file a verified objection to such affidavit within thirty-five days of being filed, as of the date thirty-five days subsequent to its filing, such affidavit shall be recorded and satisfy the lien of such mortgage on the mortgaged premises."  N.Y. Real Prop. Acts. Law § 1921.  As this pertains to an objection, the term "file" is used.  However, if this pertained to a satisfaction, the Legislature may have used the term "presented" rather than "filed", and same issue of ambiguity would exist.  Nor does the comparison between subsections provide guidance, given elsewhere, with regard to the recording of satisfactions, the Legislature appears to analogize "present" and "filing", as events that can occur at the same time.  See N.Y. Tax Law § 256 ("...unless *at the time of presenting such mortgage* for record the *owner thereof shall file* with the recording officer a sworn statement...").
[6] Defendant has acknowledged that "file" implies receipt.  (*See* Def.s' Mem. 8-9.)

Law § 321 provides that a "recording officer *shall mark on the record* of a mortgage *the word 'discharged' when there is presented to him* a certificate or certificates…specifying that the mortgage has been paid or otherwise satisfied and discharged." (emphasis added.) Clearly, the recording officer cannot mark the mortgage "discharged" until he actually receives the certificate of discharge. N.Y. Real Prop. Law § 291-I[7] requires that accompanying documents, to be filed "therewith" or alongside a legal instrument, be "presented to the recording officer" "at the same time" that the instrument is recorded electronically. In this instance, "presented to" is more akin to "filed" or "submitted" than "mailed." The most natural reading of these provisions is that a document is "presented" to the recording officer upon receipt. *See People v. Lam*, 31 Misc. 3d 101, 103, 925 N.Y.S.2d 805, 807 (App. Term 2011) ("General rules of statutory construction dictate that a statute be construed according to its natural and most obvious sense, without resorting to an artificial or forced construction" (citing McKinney's Cons. Law of N.Y., Book 1, Statutes § 94)).

Outside of property law, other New York statutes use the term "present" to indicate actual receipt. For instance, N.Y. Tax Law § 256[8] provides that, for the purpose of assessing the

---

[7] N.Y. Real Prop. Law § 291-I provides that: "[W]here a law, rule or regulation requires, as a condition of recording an instrument affecting real property, that any accompanying document be filed therewith, the requirement is satisfied if, in the case of recording by electronic means, a digitized paper document or electronic record of any such accompanying document is presented to the recording officer at the same time as such instrument is recorded by electronic means; provided that each such document or record shall be presented to the recording officer as a separate digitized paper document or electronic record unto itself." N.Y. Real Prop. Law § 291-i.

[8] N.Y. Tax Law § 256 provides that: "If the principal indebtedness secured or which by any contingency may be secured by a mortgage is not determinable from the terms of the mortgage, or if a mortgage is given to secure the performance by the mortgagor or any other person of a contract obligation other than the payment of a specific sum of money and the maximum amount secured or which by any contingency may be secured by the mortgage is not expressed therein, such mortgage shall be taxable under section two hundred and fifty-three of this chapter upon the value of the property covered by the mortgage, which shall be determined by the recording officer to whom such mortgage is presented for record, unless at the time of presenting such mortgage for record the owner thereof shall file with the recording officer a sworn statement of the maximum amount secured or which under any contingency may be secured by the mortgage…" N.Y. Tax Law § 256.

taxes to be paid on a mortgage, where the principal indebtedness is not apparent from the mortgage itself, the taxes shall be determined based on the value of the property, "unless *at the time of presenting such mortgage for record*," the owner *files* a sworn statement with the recording officer regarding the indebtedness.[9]  Defendant acknowledges that filing implies receipt.  (*See* Def.s' Mem. 8-9.)  For a sworn statement to be filed at the same time as a mortgage is "presented" for record, the mortgage would have to be before the clerk.  Furthermore, if we were to replace the term "present" with "mail", this provision would require that the owner file a sworn statement at the time that she places the mortgage in the mail.  Such an interpretation would defy the ordinary, apparent meaning of this provision.  Here again, the most obvious reading of this provision indicates that a presentation for recording occurs when the document is received by, not merely mailed to, the clerk.

## III.    "Present" in New York Case Law

New York case law elucidating the meaning of the term "present", in relevant contexts, is sparse.  However, property-related case law does imply that a document is "presented" for recording upon receipt.  See *M & T Real Estate Trust v. Doyle*, 20 N.Y.3d 563, 567, 987 N.E.2d 257 (2013) (citing *Brackett v Barney*, 28 NY 333, 340-341 (1863) (analogizing "presentment" with "delivery", and noting that where, as with a deed, delivery and acceptance is necessary to give effect to an instrument, common law dictates that delivery (or presentment), implies acceptance, without which, it is "nugatory"); *see also MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 95–96, 861 N.E.2d 81, 82–83 (2006) (synthesizing a lower court holding indicating that a "Clerk *must record and index*…. [specific kinds of] *mortgage*[*s*] *when presented*…" (emphasis

---

[9] This further supports the notion that the Legislature did not perceive a significant distinction between presenting a property-related instrument to the county clerk for recording, and filing a document with the county clerk.

added)); *Fed. Nat. Mortgage Ass'n v. Levine-Rodriguez*, 153 Misc. 2d 8, 16, 579 N.Y.S.2d 975

(Sup. Ct. 1991) (noting, in the context of competing mortgages, that, "*shortly after presentation*

of the document the title company (or *filer*) [should] *run an additional search as of the date of*

*recordation* to establish proper indexing" (emphasis added)).

    Both parties cite case law outside of the property context in support of their interpretation

of the word "present." (*See e.g.*, Def.s' Reply 2-3; Pl.s' Opp. 9-10.) However, the Court does

not find these interpretations persuasive. For instance, JPMC points to *Matter of Ford*, 111

A.D.2d 951, 490 N.Y.S.2d 46 (1985), which held that a *claim* was timely presented upon

mailing, after comparing the service requirements for a notice of claim in a similar statute.[10]

Bellino counters with *Indig v. Nat'l City Bank*, 80 N.Y. 100, 106 (1880). In *Indig*, the Court

remarked that "presentment" by mail was sufficient to present a note to a bank because the note

arrived on the date it was due, and that the bank had a duty to pay the note "on presentation"

assuming funds were available. *Indig*, 80 N.Y. at 104, 106. Taken together, these cases merely

demonstrate that the term "present" occurs in numerous contexts outside of property law,

connoting mailing on some occasions, and receipt on others.

    **IV.    Legislative History**

    The legislative history of RPL § 275 and RPAPL § 1921 provides further assistance in

ascertaining what the Legislature intended by the term "present." *See Albany Law Sch. v. New*

*York State Office of Mental Retardation & Developmental Disabilities*, 19 N.Y.3d 106, 120, 968

N.E.2d 967, 974 (2012) ("[Principles of statutory interpretation require inquiry] into the spirit

---

[10] The statute at issue in *Ford*, N.Y. Code § K51-18.0 (codified as amended at N.Y., Code § 5-393),
provides a three-year timeframe during which claims may be brought. The Court notes that Legislature
perceived this timeframe as appropriate to satisfy the purpose of § 5-393. In contrast, to achieve the intent
behind RPL § 275 and RPAPL § 1921, the Legislature provided mortgagees with a much shorter, thirty-day
window to provide mortgage satisfactions, after which liability increases every thirty days through the
ninetieth day.

and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history").  State agencies that advised the Governor of New York before he signed the statutes into law appeared to use the terms "provide" and "file" interchangeably with "present".[11]  *See* Memorandum from Robert P. Leslie, Acting General Counsel, Department of State, to Platkin (June 29, 2005), *reprinted in* Bill Jacket at 8 ("This bill . . . require[s] a mortgagee to pay specified penalties . . . if the mortgagee fails to *provide* the mortgagor with a certificate of discharge *within specified periods of time* after the mortgage has been paid." (emphasis added)); Letter from Christopher C. O'Brien, Deputy Commissioner and Counsel, Department of Taxation and Finance, to Platkin (June 24, 2005), *reprinted in* Bill Jacket at 9 ("This bill would . . . establish a *time frame under which a mortgagee would be required to file* a certificate of discharge for recording after the principal and interest due on the mortgage have been paid in full." (emphasis added)).  Sponsors of the bill also appeared to use the term "deliver" interchangeably with "present".[12]  *See* N.Y. Gen. Assemb. Debate on Assemb. Bill A4540–C, Calendar No. 445 (June 15, 2005) (noting during debate that, "if the satisfaction is delivered to the county clerk more than" thirty days after a mortgage is paid, a penalty would result).

## V.    Analysis

As a general rule, Courts should apply an interpretation that harmonizes the provisions of a statute with each other, and with the general intent of the statute, *Westchester Cty. Dep't of Soc. Servs. ex rel. Melissa B. v. Robert W.R.*, 25 A.D.3d 62, 68–69, 803 N.Y.S.2d 672, 676–77 (2005), which is to ensure the timely recording of satisfactions.  As part of this endeavor, the

---

[11] Provide is defined as "to make available" "to supply", "to give".  Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary (last visited Sept. 28, 2016).  File is defined as "to place (among official records)".  *Id.*
[12] Deliver is defined as "to take and hand over to or leave for another".  *Id.*

Court attempts to give effect to every word of the statute, so as to avoid interpretations that would render any language superfluous. *State St. Bank & Trust Co. v. Salovaara,* 326 F.3d 130, 139 (2d Cir.2003). "In the construction of a statute, meaning and effect should be given to all its language, if possible, and words are not to be rejected as superfluous when it is practicable to give to each a distinct and separate meaning." N.Y. Stat. Law § 231. If the Court were to adopt JPMC's interpretation, it would render both the first provision, and the phrase "arrange to", superfluous. If the first provision required that mortgagees mail the mortgage satisfaction within thirty days, and the second provision required the exact same thing, lest the mortgagee be subject to penalties, the first provision would be a redundancy, encompassed within the second provision. This interpretation would also render the phrase "arrange to" an unnecessary and peculiar addition, omitted from one sentence to the next. "Among the most fundamental canons of statutory interpretation is the rule that [w]hen different terms are used in various parts of a statute or rule, it is reasonable to assume that a distinction between them is intended." *N. Mariana Islands v. Millard*, 287 F.R.D. 204, 211 (S.D.N.Y. 2012) (internal quotations omitted). Moreover, an "inference must be drawn that what is omitted or not included was intended to be omitted and excluded". *Chem. Specialties Mfrs. Ass'n v. Jorling*, 85 N.Y.2d 382, 394, 649 N.E.2d 1145, 1151 (1995) (internal quotation marks and citations omitted). This would appear to be especially true for consecutive sentences. In order to harmonize these sentences with each other, and the Statutes' legislative intent, this Court adopts Bellino's interpretation, and reads RPL § 275 and RPAPL § 1921 to require that the mortgagee "arrange," or make preparations to provide, the county clerk with the satisfaction within thirty days, and if it fails to provide the mortgage satisfaction to the clerk, ensuring receipt within that time period, to be subject to penalties.

As this Court has said previously, penalties for failure to timely provide satisfactions encourage mortgagees to record mortgage satisfactions expeditiously, which helps ensure that property records accurately reflect encumbrances (or lack thereof), and facilitate efficient real estate markets. *See Glatter v. Chase Manhattan Bank*, 669 N.Y.S.2d 651, 654 (App. Div. 1998) (noting that "[d]ischarges of mortgages are routinely delivered many months after the final payment has been made to the mortgage lender," and that the legislative sponsors of the Statutes enacted this scheme to prevent this problem from "bring[ing] the whole system for transferring residential property in [New York] grinding to a halt" (internal quotation marks omitted)).[13]  If the Court were to find that presentment occurred upon mailing, to the extent delivery dates can vary significantly between mail carriers, the certificate could presumably take days, weeks, or longer to arrive, in direct contravention of the statutory intent to incentivize the timely recording of satisfactions. *See O'Reilly v. State*, 164 Misc. 2d 477, 480, 625 N.Y.S.2d 801 (Ct. Cl. 1995) (noting it could take "many days" for mail to be delivered even within one state).

Based upon the plain meaning of the term "present", the meaning of the term as it appears in the Statutes, similar provisions and case law, and the legislative intent and history of the RPL § 275 and RPAPL § 1921, the Court finds that a satisfaction is "presented" for recording upon receipt by the county clerk.  Accordingly, this Court construes RPL § 275 and RPAPL §

---

[13] Defendant relies on *O'Reilly v. State*, 164 Misc. 2d 477, 479, 625 N.Y.S.2d 801 (Ct. Cl. 1995), where the Court observed that the legislative purpose of "encourage[ing] the prompt payment of settled actions" was "equally served regardless of whether it is the act of mailing or receipt that controls."  (Def.s' Mem 8.)  However, the harm to be addressed through RPL § 275 and RPAPL § 1921 is distinct from that of the statute addressed in *O'Reilly*.  Here, the Legislature was concerned that owners would act upon the belief that their satisfactions had been recorded, only to find out, for instance, at the time they attempted to sell their property, that a lien remained, to theirs and others' detriment.  N.Y. Gen. Assemb. Debate on Assemb. Bill A4540–C, Calendar No. 445 (June 15, 2005).  This is distinct from receiving payment of settled actions, because the person receiving said payment is in an appropriate position to determine whether or not their funds have been received, and there is limited risk that they will engage in activity under a reasonable assumption they have already received the funds.

1921 to have required that JPMC provide Bellino's satisfaction to the county clerk for recording on or before the thirtieth day after Bellino paid the balance due on her mortgage.

**CONCLUSION**

For the foregoing reasons, JPMC's motion for summary judgment is DENIED.  The Court respectfully directs the Clerk to terminate the motion at ECF No. 66.  The parties are directed to contact Judge McCarthy within 48 hours of this decision.

Dated:    October 3rd, 2016
          White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge